## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **ANITA LOWERY** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 04-1868 (RMC)** |
| | ) | |
| **DISTRICT OF COLUMBIA HOUSING** | ) | |
| **AUTHORITY** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Arnita Lowery is a disabled single parent who lives in publically-subsidized housing in the District of Columbia. Under the Section 8 Housing Choice Voucher Program ("Section 8 Program"), the District of Columbia Housing Authority ("DCHA") contributes money to pay Ms. Lowery's rent over what she can afford, from funds disbursed as grants by the federal Department of Housing and Urban Development ("HUD"). For the reasons explained below, DCHA proposed to terminate Ms. Lowery's involvement in the Section 8 Program. This Court issued a preliminary injunction requiring DCHA to provide a voucher to Ms. Lowery whereby she could convince a private landlord that DCHA would subsidize her rent. With that voucher, Ms. Lowery was able to rent an apartment for herself and her daughter.[1] Ms. Lowery pursues this suit under 42 U.S.C. § 1983, seeking damages from DCHA for alleged constitutional torts when she was deprived of a property interest without due process of law and when she received a hearing that was

---

[1] *See Lowery v. District of Columbia Housing Authority*, No. 04-1868 (RMC), Order on Motion for Preliminary Injunction (D.D.C. Oct. 29, 2004) [Dkt. No. 5].

constitutionally defective because it was untimely.  DCHA moves to dismiss, arguing that the case

is moot and non-justiciable.

## I. BACKGROUND

### A.  Section 8 Program

Ms. Lowery has participated in the Section 8 Program since 2001.[2]  The Section 8

Program is a federally funded program that provides rent subsidies to private landlords who lease

rental units to eligible low-income families.  DCHA is a federally-funded independent housing

authority established by the District of Columbia, *see* D.C. Code § 6-202 (2004), which administers

the Section 8 Program in the District.

The first step for an income-eligible family is to file an application with DCHA to

participate.  Once an applicant reaches the top of the DCHA Waiting List (which is currently about

16,000 families), the applicant is certified as eligible and is provided a "voucher" when funding is

available.  The voucher is not a lease, but it is a "commitment from DCHA that: **IF** the voucher

holder [locates a qualified unit] . . . **then** DCHA will . . . enter into a . . . contract with the landlord"

by which DCHA will subsidize the tenant's rent.  Defendant District of Columbia Housing

Authority's Memorandum of Points and Authorities in Support of Its Motion to Dismiss ("Def.'s

Mem.") at 4 (emphasis in original).  The DCHA/landlord contract is a Housing Assistance Payments

contract ("HAP"), not the lease itself.  *See* 24 C.F.R. § 982.4(b).  The tenant signs an independent

lease with the landlord.  Def.'s Mem. at 4.

---

[2] The Housing Choice Voucher Program was enacted as Section 8 of the Housing and Urban-Rural Recovery Act of 1983, amending the U.S. Housing Act of 1937, 42 U.S.C. § 1437f, which was further amended by the Quality Housing and Work Responsibility Act of 1998, Pub. L. No. 105-276 (1998).  Congress created the Section 8 Program "for the purpose of aiding low-income families in obtaining a decent place to live and of promoting economically mixed housing . . . ." 42 U.S.C. § 1437f(a).  HUD has promulgated implementing regulations for the Section 8 Program at 24 C.F.R. § 982.

Under federal regulations, an "applicant" is a family that has applied for admission to a program but is not yet a participant. 24 C.F.R. § 982.4(b). "Admission" to the Section 8 Program is measured from the "point when the family becomes a participant in the program. The date used for this purpose is the effective date of the first HAP contract for a family (first day of initial lease term) in a tenant-based program." *Id.* Thus, an applicant family that reaches the top of the waiting list and receives a voucher is not yet a "Participant," but becomes so when it executes its first lease with a landlord that has entered into a HAP contract with DCHA. Once a family is a Participant, various federal laws and regulations apply. Federal regulations state those instances in which a public housing authority like DCHA may terminate assistance to a Participant and also state the obligations of a Participant in the program. *See id.* at §§ 982.552, 982.555.

A voucher has an expiration date, which may be extended to give a family more time to locate housing. While DCHA is not required by federal regulations to provide a hearing to a family when it decides not to approve the extension of a voucher, *see* 24 C.F.R. § 982.555(b)(4), there are municipal regulations in the District of Columbia that require it to provide written notice and the opportunity for a hearing to contest any DCHA "[a]pproval or denial of an extension or suspension of a voucher term." 14 D.C.M.R. § 8902.1(i). Under federal regulations, DCHA "must give the opportunity for an informal hearing before [it] terminates housing assistance payments for the family under an outstanding HAP contract" if, *inter alia*, it decides to terminate assistance because the participant family has been absent from the assisted unit for longer than 180 days. 24

C.F.R. § 982.555(a)(2), (a)(1)(vi)[3]; *see also* 14 D.C.M.R. § 8902.1(j) (hearing must be offered for

any "[t]ermination or denial of assistance for any reason").

In those instances in which DCHA is required to provide a hearing, DCHA "must

proceed with the hearing in a *reasonably expeditious* manner upon the request of the family." 24

C.F.R. § 982.555(d) (emphasis added). The federal regulations governing termination and informal

hearings were crafted specifically to meet the minimum requirements of due process. *See Nichols*

*v. Landrieu*, No. 79-3094, 1980 U.S. Dist. LEXIS 17630, at *8 (D.D.C. Dec. 23, 1980) (ordering

HUD to publish due process provisions in Code of Federal Regulations to ensure enforceability).

DCHA has defined "reasonably expeditious" in its own regulations:

When DCHA receives a timely written request for an informal hearing:

(a) DCHA must mail a letter notifying the family or applicant of the date
and time of the informal hearing within fifteen (15) days of the postmark
date of the informal hearing request, if such request is mailed to DCHA, or
within fifteen (15) days of the receipt date of the informal hearing request,
if such request is delivered to DCHA.
. . .
(c) The date of the informal hearing shall be no sooner than fifteen (15)
days and no later than thirty (30) days after the postmark date of DCHA's
letter notifying the family or applicant of the date and time of the informal
hearing.

14 D.C.M.R. § 8903.2 (a) & (c).

**B. Factual Background**

As stated above, Ms. Lowery has participated in the Section 8 Program since 2001.

Prior to the summer of 2002, she rented an apartment in Southeast Washington, D.C., where she

resided with her young daughter. In the summer of 2002, Ms. Lowery commenced a sixteen-month

---

[3] *See also id.* § 982.312 (noting that a family may not be absent from the unit for more
than 180 consecutive days "for any reason" and housing assistance terminates if the family is
absent for longer than that maximum period).

sentence at Danbury Correctional Facility in Connecticut. She left her home and her daughter in the care of her adult son. She notified DCHA that she had left her residence and daughter in the care of her son and provided a Power of Attorney to DCHA, authorizing her son to perform all program responsibilities on her behalf. *See* Plaintiff's Amended Complaint ("Compl.") ¶ 17.

DCHA re-certifies each Participant's eligibility for the Section 8 Program annually. Ms. Lowery's son re-certified on her behalf in or about March 2002, but neither he nor Ms. Lowery re-certified her eligibility in 2003. Accordingly, DCHA discontinued the HAP rent subsidy payments to the landlord on August 1, 2003. As a result, Ms. Lowery's son was forced to vacate the premises and her daughter began living with other family members.[4]

Ms. Lowery was released from prison in November 2003 to complete her sentence in a District of Columbia halfway house. Upon her return to the District, she began making efforts to regain her voucher for the Section 8 Program. She was issued a new voucher in January 2004, with a term of 30 days. She was unable to secure Section 8 housing in that time and the voucher expired on February 6, 2004. Ms. Lowery did not seek an extension of her voucher but instead moved into a transitional housing program with case management services. In May 2004, she attempted to gain an extension of her expired voucher but she was unsuccessful. Instead, on or about May 27, 2004, Ms. Lowery received a letter from DCHA stating that it was recommending that her participation in the Section 8 Program be terminated, effective June 30, 2004. That letter explained,

> It is the policy of DCHA to end participation in the [Section 8 Program] if more than 180 days has elapsed since the last housing assistance payment to the owner. The last day we made housing assistance payments on your behalf was August 1, 2003.

---

[4] On "information and belief," the amended complaint suggests that neither Ms. Lowery nor her son received prior notice that HAP payments would cease. Compl. ¶ 18.

Compl. ¶ 24.  DCHA also sent a form titled, "Recommendation for Termination," which stated:

> As a result of your failure to comply with your *Family Obligations* in the Section 8 Housing Choice Voucher Program, this letter serves as **formal notice** of Recommendation for Termination of Assistance.  Below you will find the reason(s) for this decision:
>
> Comments: Per HUD Regulations the [Public Housing Agency ("PHA")] must terminate/end participation for assisted families when there has [sic] been more than 180 days has past [sic] since the PHA last provided assistance on behalf of the assisted family.  DCHA last Housing Assistance Payment on your behalf was 8/1/03. [sic]

*Id.* ¶ 25 (emphasis in original).  Ms. Lowery timely requested a hearing[5] to challenge the agency's decision.  She continued to attempt to receive a voucher but was told she would have to have a hearing before she could receive one.  *See* Affidavit of Arnita Lowery ¶ 20 (Exhibit A to Plaintiff's Application for Temporary Restraining Order and Preliminary Injunction) [Dkt. No. 3].

DCHA scheduled Ms. Lowery's hearing for August 19, 2004. Although she appeared, DCHA informed her that the hearing could not proceed.  *Id.*  DCHA did not offer a newly-scheduled date for the hearing.  Thereafter, Ms. Lowery attempted on September 20, October 2, and October 12, 2004, to re-schedule the hearing on DCHA's decision to terminate her participation in the Section 8 Program.  *See* Compl. ¶¶ 27- 30.  She was unsuccessful.

Ms. Lowery submitted her complaint and application for a temporary restraining order and preliminary injunction to this Court on October 19, 2004.  Her counsel hand-delivered a copy of the complaint and application to DCHA on the same day.  Ms. Lowery sought to proceed *in forma pauperis* (without payment of the filing fee), and her application was approved by the Court.  The complaint was officially docketed and filed on October 27, 2004.

---

[5]  A Participant must submit a written request for a hearing within 30 days of notice of a DCHA decision that the Participant wants to challenge, in this case on or about June 27, 2004. *See* 14 D.C.M.R. § 8903.1(c).

DCHA held a hearing on its recommendation to terminate Ms. Lowery's participation in the Section 8 Program on October 27, 2004. DCHA's hearing officer issued a decision on November 17, 2004, in Ms. Lowery's favor. He found that the notice in May 2004 was infirm and ordered DCHA to issue her a new voucher.

In the meantime, the Court granted Ms. Lowery's motion for a preliminary injunction on October 29, 2004, and ordered DCHA to provide a voucher to Ms. Lowery. Using the voucher, Ms. Lowery located a unit for herself and her daughter. She signed a lease on December 23, 2004, and moved in shortly thereafter.

Before she was able to lease a unit for her family, Ms. Lowery resided in a transitional housing program for homeless women. Her daughter was not allowed to live with her and was required to stay with other family members. She asserts that she suffered pain, emotional distress, embarrassment, and depression. Count 1 of the Amended Complaint alleges a violation of the United States Housing Act, 42 U.S.C. § 1437, due to "DCHA's termination of Ms. Lowery's Section 8 Voucher . . . because 180 days had elapsed since the last HAP payment on her behalf." Compl. ¶ 37. Count 2 of the Complaint alleges a violation of Ms. Lowery's rights to due process of law under the 14th Amendment to the United States Constitution because DCHA terminated "Ms. Lowery's Section 8 Voucher without an opportunity for a hearing." Compl. ¶ 43.

Finally, Count 3 alleges that the termination of Ms. Lowery's voucher without the opportunity for a hearing violated the DCHA Administrative Plan and federal regulations. Ms. Lowery does not "seek to recover monetary damages for DCHA's violation of the Administrative Plan." Plaintiff's Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp.") at 8 n.3. Indeed, Ms. Lowery is no longer pursuing any remedy for Count 3. Accordingly, the Court will only consider

the first two causes of action set forth in Ms. Lowery's Amended Complaint.

## II.  LEGAL STANDARDS

### A.  Subject Matter Jurisdiction

Pursuant to 28 U.S.C. § 1331(a), the "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  For purposes of this statute, a claim "arises under" federal law in "those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  *Franchise Tax Bd. v. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983); *Quarles v. Colorado Sec. Agency, Inc.,* 843 F.2d 557, 558 (D.C. Cir. 1988).  Ms. Lowery's complaint alleges that Defendant's termination of her participation in the Section 8 Program "without an opportunity for a hearing violates the Due Process Clause" of the United States Constitution. Compl. ¶ 43.  "Because this claim arises under the laws of the United States and is neither 'immaterial and made sole for the purpose of obtaining jurisdiction' nor 'wholly insubstantial and frivolous,'" this court has federal question jurisdiction under § 1331.  *E.E.O.C. v. St. Francis Xavier Parochial School*, 117 F.3d  621, 623 (D.C. Cir. 1997) (citing *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)).

### B.  Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of proving by a preponderance of the evidence that the Court possesses jurisdiction over her claims.  *See Fitts v. Federal Nat. Mortg. Ass'n,* 44 F. Supp. 2d 317, 320 (D.D.C. 1999), *aff'd*, 236 F.3d 1 (D.C. Cir. 2001); *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 195 (D.D.C. 2002).

In reviewing a motion to dismiss under Rule 12(b)(1), the Court must accept the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  These allegations, however, "'will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim."  *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure 2d, § 1350).  The Court may consider information outside the pleadings to determine its jurisdiction.  *See Lipsman v. Sec'y of Army*, 257 F. Supp. 2d 3, 6 (D.D.C. 2003).

For the court to grant a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure,  it must "appear[] beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994).  The threshold  inquiry in resolving a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claims.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183 (1984). Just as with a motion to dismiss pursuant to Rule 12(b)(1), "the court must accept as true all [of the plaintiff's] well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff[]."  *Alexis v. District of Columbia*, 44 F. Supp. 2d 331, 336-37 (D.D.C. 1999).  Although the court must construe the complaint in the light most favorable to the non-moving party, it "need not accept inferences drawn by the plaintiff if such inferences are unsupported by the facts set out in the complaint."  *Kowal*, 16 F.3d at 1276.  In addition, the court need not accept the plaintiff's legal conclusions as true.  *See Alexis*, 44 F. Supp. 2d at 337.

## III. ANALYSIS

As a factual matter, there is no dispute that DCHA denied Ms. Lowery a housing voucher and notified her that she would be terminated from the Section 8 Program, without giving her an opportunity to challenge her termination for months. In the meantime, she was homeless and separated from her daughter. She asserts that DCHA violated the United States Housing Act ("USHA") and her rights to constitutional due process.[6] Because 42 U.S.C. § 1983 ("§ 1983") provides a vehicle for Ms. Lowery to challenge DCHA's failure to afford her a timely hearing, the Court can resolve this case and avoid decision on the constitutional issues. *See Blum v. Bacon*, 457 U.S. 132, 137 (1982) ("Where a party raises both statutory and constitutional arguments . . . ordinarily [federal courts] first address the statutory argument to avoid unnecessary resolution of the constitutional issue."); *see also Palestinian Information Office v. Shultz*, 853 F.2d 932, 939 (D.C. Cir. 1988) (similar).

The Court concludes that Ms. Lowery has established a viable claim under § 1983

---

[6] Two important caveats should be noted. First, DCHA originally argued that this case is moot and said that it was "most troubling" that Ms. Lowery filed suit asking for an administrative hearing on the day her administrative hearing was actually held, *i.e.*, October 27, 2004. *See* Def.'s Mem. at 7. This argument is no longer advanced in DCHA's reply brief, presumably because Ms. Lowery's response makes clear that she submitted her complaint and application for immediate relief, and served a copy to DCHA, on October 19, 2004, and that the pleadings were formally filed on October 27, 2004, after her application to proceed *in forma pauperis* was approved by the Court. Ms. Lowery argues that it was only when she notified DCHA of the lawsuit that the agency was then prompted to grant her a hearing after months of delay. She now seeks damages for the months that she was homeless. A deprivation of statutory or constitutional rights can give rise to a claim for monetary damages under 42 U.S.C. § 1983. *See Carey v. Piphus*, 435 U.S. 247, 253 (1978); *Maine v. Thiboutot*, 448 U.S. 1, 5 (1980). Accordingly, the Court finds that the suit presents a live controversy and is not moot.

Second, as noted above, Ms. Lowery's Amended Complaint sought relief for DCHA's alleged violation of its Administrative Plan. However, she no longer pursues a claim under the Plan or pursuant to 24 C.F.R. § 982.54. *See* Pl.'s Opp. at 8 n.3.

that DCHA violated USHA by not providing her with a "reasonably expeditious" hearing before terminating her participation in the Section 8 program, thereby depriving her of procedural due process.

### A. Section 1983

Section 1983 allows a claim for monetary damages against a state actor by persons who are deprived of "any rights" that are "secured by the . . . laws."  The statue provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The Supreme Court has held that § 1983 was intended to create "a species of tort liability' in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution" *Carey v. Piphus*, 437 U.S. 247, 253 (1978), and federal statutes.  *See Maine v. Thiboutot*, 448 U.S. 1, 5 (1980).  "Compensatory damages [under § 1983] may include not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation . . ., personal humiliation, and mental anguish and suffering.'" *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974)); *see Daskalea v. District of Columbia*, 227 F.3d 433, 443 (D.C. Cir. 2000) ("It is well established that 'mental and emotional distress' are 'compensable under §1983,' even in the absence of physical injury.").

Here, Ms. Lowery asserts that she has suffered mental and emotional distress compensable under § 1983 because during the time she was without a voucher, in alleged violation of her right to a timely hearing, she was unable to provide a home for herself and her daughter.

Compl. ¶ 34. She says that this situation caused her great distress, pain, humiliation, and depression in violation of her due process rights. *Id.* ¶ 35.

Assessing whether Ms. Lowery has alleged a due process violation involves a two-step inquiry. First, the Court must examine whether the alleged violation involves a property interest subject to constitutional protection. If so, the Court must then assess whether the complaint alleges insufficient process in the deprivation of that interest. *Propert v. District of Columbia*, 948 F.2d 1327, 1331 (D.C. 1991); *see Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 542 (1985) ("The root requirement" of the Due Process Clause is "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest.") (internal quotations and citation omitted).

## B.  Has Ms. Lowery Established a Cognizable Claim?

"It is uncontested" that a Participant in the Section 8 Program "enjoys a property interest in continued occupancy of the subsidized housing, and, further, that the interest constitutes a statutory entitlement. Accordingly, the protections of procedural due process apply." *Nichols v. Landrieu*, No. 79-3094, 1980 U.S. Dist. LEXIS 17630, at *1; *see* 24 C.F.R. § 982.554(2) (participant must be heard before termination of housing assistance under an outstanding HAP contract). In *Goldberg v. Kelly*, 397 U.S. 254 (1970), the Supreme Court outlined the constitutional due process required before terminating a participant's government assistance benefits: "timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally." *Id*. at 267-68. Neither party contests this precept of Section 8 Program law. However, as DCHA points out, at the time that Ms. Lowery was notified that DCHA had decided to terminate her participation

and that she could ask for an informal hearing, she was not living in subsidized housing and was not the beneficiary of an outstanding HAP contract  – indeed, she did not even have an unexpired voucher.  Therefore, the agency argues that she had no type of *Goldberg* property interest at stake.

Ms. Lowery urges the Court to take a more holistic approach to the Section 8 Program. She argues that her "right to a voucher is a constitutionally protected 'property interest,' and DCHA's failure to hold a hearing, both before and after depriving . . . her of that interest, denied her the most basic element of due process: the opportunity to be heard."  Plaintiff's Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp.") at 8.  Ms. Lowery relies on *Simmons v. Drew*, 716 F. 2d 1160 (7th Cir. 1983), where the Seventh Circuit analogized Section 8 Program participation to job tenure, noting that in both circumstances, the government was conferring a benefit that it could not withdraw absent just cause and holding that a Participant was entitled to a termination hearing even if she were not currently occupying a subsidized unit.  *Id*. at 1166 ; *see also Colvin v. Hous. Auth. of Sarasota*, 71 F.3d 864, 866 (11th Cir. 1996) (noting that due process protects voucher holders searching for housing); *Chesir v. Hous. Auth. of Milwaukee*, 801 F. Supp. 244, 248 (E.D. Wis. 1992) (holding that voucher holders who have not yet found housing have a continuing property interest in the viability of their vouchers).  The Ninth Circuit has extended due process protections to applicants to a Section 8 Program, deeming them to have a property interest in their potential eligibility.  *See Ressler v. Pierce*, 692 F.2d 1212, 1215-16 (9th Cir. 1982); *see also Baldwin v. Hous. Auth. of Camden*, 278 F. Supp. 2d 365, 380 (D.N.J. 2003) ("[D]ue process must attach to the process of determining ineligibility, whether at the outset or after the receipt of benefits.") (quoting *Kelly v. R.R. Ret. Bd.*, 625 F.2d 486, 490 (3rd Cir. 1980)).

Ms. Lowery's argument goes too far. It would transform every step of the Section 8 Program into a "right" of constitutional proportions. There is no evidence that Congress intended such a sweeping approach to the Section 8 Program. Morever, the federal regulations, which are issued by the agency expert in interpreting and applying the statute, *see Chevron U.S.A. Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984), explicitly reject such an outcome. Pursuant to the federal regulations, a family has no entitlement to participation in the Section 8 Program, a family is not a Participant in the program until a HAP contract becomes effective, and there is no obligation to hold a hearing on decisions concerning extension or suspension of a voucher. *See* 24 C.F.R. §§ 982.4(b), 982.555(2)(b)(4). Thus, one must use a more precise analysis to determine whether a Participant has any property right that would require a timely due process hearing under the relevant facts.

DCHA tries to prevail in one fell swoop by arguing that Ms. Lowery, even though a Participant, had no federally-enforceable right to a timely hearing (or a voucher in the interim) because she did not have an outstanding voucher and she did not occupy a rented unit at the time she was notified of the proposal to terminate her participation in the Section 8 Program. *See* Defendant District of Columbia Housing Authority's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss ("Def.'s Reply") at 10 n. 5, 13. For these reasons, DCHA argues that it had no obligation to afford Ms. Lowery any procedural due process at all in the summer and fall of 2004. *See id.* at 3 (arguing that there is no authority requiring a hearing prior to termination for a plaintiff without housing or a HAP contract).

The Court finds DCHA's argument very troubling. It is true that Ms. Lowery's voucher expired in February 2004 and was not extended. It is also true that she was not living in assisted housing under a HAP contract when she received notice of the proposal to terminate her

participation in the Section 8 Program.  DCHA argues that Ms. Lowery had no property interest of any kind in her status as a "Participant," meaning that DCHA could prolong and delay her informal hearing for months beyond its own deadlines without recourse.  At least now it is clear why DCHA was so laggard in providing a hearing for Ms. Lowery: its legal position is that she was not entitled to one.

The Court disagrees.  An applicant becomes a Participant when the initial HAP contract becomes effective.  *See* 24 C.F.R. § 982.4(b).  Thereafter, the Participant can be terminated from the Section 8 Program only for specified reasons and only with notice and an opportunity for a hearing.  Presumably, upon termination, a qualified family could re-apply for Section 8 Program assistance – and go to the end of the waiting list.  Since there are now approximately 16,000 waiting families in the District of Columbia and dwindling resources,[7] termination from participation has real and long-term consequences.

Clearly, DCHA must provide a hearing whenever it determines to terminate assistance because the Participant family has been absent from the assisted unit for longer than the maximum period of 180 days, as here.  *See* 24 C.F.R. § 982.555(a)(vi).  Just as clearly, DCHA must provide that hearing before it ceases to subsidize the rent of a family with an outstanding HAP contract because the family has been absent from the assisted unit for more than 180 days.  *Id.* § 982.555(a)(2).  "When a hearing is required . . . [DCHA] must proceed with the hearing in a reasonably expeditious manner . . . ."  *Id.* § 982.555(d).  Ms. Lowery argues that she had a due process right to a timely hearing or to a voucher for housing while she awaited a delayed hearing.

---

[7]  *See* Def.'s Reply at 5 ("[T]he amount of assistance is finite (and diminishing) and the waiting lists for homeless households are long.  DCHA's waiting list conservatively calculated stands at 16,000 homeless families.").

Pl.'s Opp. at 11.  DCHA argues that "the timelinesss of the issuance of a voucher is not an issue of constitutional proportions but rather one which turns on DCHA's Administrative Plan and as such is appropriately directed for judicial review in the Superior Court."  Def.'s Reply at 3 n.3.

The Court concludes that both parties' arguments are mis-focused.  Both sides agree that DCHA could not have ceased subsidizing Ms. Lowery's rent until after a hearing on the proposal to terminate her from the Program, had she been living in Section 8 housing at the time. Her claim here is broader: she argues that there is no constitutionally significant distinction "between a mere voucher 'holder' and a voucher participant who is occupying a unit with assistance."  Pl.'s Opp. at 13.  On the facts presented, the Court has no occasion to address this argument.  Ms. Lowery was not a "voucher holder" in May 2004 when she received the proposal to terminate.  Her most immediate voucher had expired months before, in February 2004.[8]

On these facts, Ms. Lowery's real argument is that she was a Participant who had not yet had a hearing on the proposal to terminate and was therefore entitled to a voucher.  The Court can find no support for this argument in the statute, the federal regulations, or the Constitution.  A Participant is not entitled to a voucher if the Participant family fails to satisfy the requirements of the Section 8 Program, including the family obligations imposed by the regulations.  There was a

---

[8]  Under the DCHA Administrative Plan, it is arguable that this voucher should have given Ms. Lowery more than 30 days to locate appropriate housing.  However, Ms. Lowery has dropped all arguments arising under the Administrative Plan so the Court will not wander into this thicket.  See Pl.'s Opp. at 8 n.3 ("In her Complaint, Ms. Lowery also sought relief for DCHA's violation of its Administrative Plan, which federal law requires the agency to follow in implementing the voucher program.  See 24 C.F.R. § 982.54.  The Administrative Plan and, as such, accompanying local regulations set forth specific mandates for the Section 8 informal hearing process and supported Ms. Lowery's claim for injunctive relief. Ms. Lowery does not, however, seek to recover monetary damages for DCHA's violation of the Administrative Plan. Because damages are now the main issue before the court, Ms. Lowery does not pursue her claim under the Plan or 24 C.F.R. § 982.54.").

16

good-faith outstanding question, based on the cessation of assistance to the Lowery family for more than 180 days through no fault of DCHA, as to whether Ms. Lowery had continued to satisfy the requirements of the Program and continued to be entitled to a voucher.  In the face of this legitimate pending question, the Court cannot find that Ms. Lowery should have received a voucher.

However, Ms. Lowery *was* entitled to a "reasonably expeditious" hearing on the matter so that she would not be stuck in limbo: without a voucher, without access to a voucher, without a hearing on her eligibility for a voucher, and, therefore, without housing.  The homeless should not be forced to sue DCHA to obtain a hearing that is mandated by both federal and municipal regulations.[9]  Such a process is contrary to the policies and purposes of the statute, contrary to the assurances in the federal regulations, and directly contrary to DCHA's own regulations – which define the speed that is "reasonably expeditious" for the residents of the District of Columbia to receive a hearing under the Section 8 Program.  Those regulations are written in mandatory language, which leaves no discretion for DCHA.  *See* 89 D.C.M.R. § 8903.2(a) (DCHA "must" send a letter with a date for a hearing within 15 days of request) and (c) (date of hearing "shall be" no sooner than 15, nor later than 30, days after postmark date of DCHA letter).

---

[9]  By focusing on whether it was required to provide a voucher while Ms. Lowery awaited her long-delayed hearing, DCHA misses the fact that it completely failed to provide a timely hearing and that it cannot terminate a Participant – even one who is not in assisted housing or the beneficiary of a HAP contract – without a prior hearing.  *Compare* 24 C.F.R. § 982.555(a)(1)(vi) (hearing required whenever there is a "determination to terminate assistance" because the family has been absent from the unit); *with id.* § 982.555(a)(2) (the hearing must predate the cessation of benefits when a family is receiving assistance under a HAP contract).  The federal regulations contemplate the necessity for a hearing before a public housing authority can decide to terminate assistance *even when* the family is not living in assisted housing under a HAP contract.  This interpretation is supported by DCHA's notice to Ms. Lowery that she was entitled to a hearing.  Of course, the municipal regulations are similar.  *See* 14 D.C.M.R. § 8902.1(j) (noting that a hearing must be offered for any "[t]ermination or denial of assistance for any reason").

DCHA cites to *Edwards v. District of Columbia*, 821 F.2d 651, 653 n.2. (D.C. Cir. 1987) for the proposition that the adjudication of compliance with these requirements should be in the Superior Court.  Def.'s Reply at 6.  DCHA's reliance on *Edwards* is misplaced.  In that case, certain tenants and former tenants of public housing sued the District of Columbia and HUD.  One of their claims was that "the District violated its lease agreements with them by failing to maintain the project in a decent, safe, and sanitary condition." *Edwards*, 821 F.2d at 653.  The *Edwards* plaintiffs relied on 42 U.S.C. § 1427d(*l*) for jurisdiction in federal district court.  That portion of the statute directs that "'[e]ach public housing agency shall utilize leases which' require such maintenance . . . ." *Id.*  As the D.C. Circuit Court of Appeals explained,

> [T]he only rights created by § 1437(*l*) itself are rights to a lease that in turn requires proper maintenance and termination.  Plaintiffs do not claim that their leases fail to require these things; rather, they argue that the District has breached its duties regarding proper maintenance and termination contained *within* those leases.  We agree with the District Court that § 1437(*l*) does not create federal rights to proper maintenance and termination, and that these claims belong in local court.

*Id.* (emphasis in original).  Thus, contrary to DCHA's argument, *Edwards* does not stand for the proposition that "claim[s] the District of Columbia violated a federal statute . . . belong[] in [Superior] court." Def.'s Reply at 6-7.  The case does, however, stand for the proposition that claims against the District that do *not* arise under a federal statute belong in Superior Court.

Because DCHA over-reads *Edwards*, it contends that "the right to bring a private cause of action must exist in the Housing Act itself and it has already been established that no such right exists." Def.'s Mem. at 11 (citing *Edwards*, 821 F.2d at 663).  The first part of this statement is substantially correct and the second is not.  In *Edwards*, the D.C. Circuit noted that "[t]he task for each court in determining whether a provision in a grant-in-aid program secures rights is to ask

18

whether Congress has spoken with a 'clear voice' so that states and local governmental units may 'exercise their choice knowingly.'" 821 F.2d at 656 (quoting *Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1, 17 (1981)).  Utilizing this test, the D.C. Circuit has found that 42 U.S.C. § 1437d(k), requiring an administrative grievance procedure, was sufficiently precise that public housing tenants in the District of Columbia could sue to force DCHA to establish a procedure.  *See Samuels v. District of Columbia*, 770 F.2d 184, 191 (D.C. Cir. 1985); *see also Wright v. City of Roanoke Redevelopment and Hous. Auth.*, 479 U.S. 418, 425 (1987) (finding that the Brooke Amendment to the U.S. Housing Act, 42 U.S.C. § 1437a was sufficiently precise to allow tenants to sue under § 1983).  "Section 1983 creates an express federal remedy for state and municipal violations of federal law which, under *Pennhurst*, can only be defeated through a clear showing that Congress did not intend the relevant statute to create binding federal obligations."  *Samuels*, 770 F.2d at 196 n. 9.  HUD's regulations "clearly have the full force and effect of federal law" and an allegation "that the District's public housing officials have violated the applicable HUD regulations . . . states a cognizable section 1983 claim" when the regulations are sufficiently precise. *Id.* at 199.

As applicable to this lawsuit, 42 U.S.C. § 1437d(k)(1) requires DCHA to establish and implement an administrative grievance procedure under which tenants can request a hearing concerning "any proposed adverse public housing agency action."  When accepting federal funds for its Section 8 Program, the District of Columbia knows that "it is undertaking certain obligations, with correlative rights being secured to the affected citizens."  *Edwards*, 821 F.2d at 658.  One of these rights is that Participant families receive a "reasonably expeditious" hearing if DCHA proposes any adverse action, such as a proposal to terminate  participation.  The District of Columbia has

19

accepted the obligation to provide reasonably expeditious hearings to D.C. residents by adopting municipal regulations which require a hearing no later than 45 days after it is requested by the Participant.

DCHA seeks to avoid its obligation to provide a timely hearing to Ms. Lowery by arguing that there is no case "where a court has held that procedural due process requires that a housing authority accord a plaintiff a hearing *prior to termination from the program*, where the plaintiff was similarly situated to Ms. Lowery and was not in possession of a voucher, leased-up, or occupying a dwelling and receiving a HAP subsidy." Def.'s Reply at 3-4 (emphasis added). Let this be the first. The HUD regulations were adopted to ensure procedural due process. Moreover, the regulations were designed to provide enforceable rights to Participants in the Section 8 Program. *See* 49 Fed. Reg. 12215 (Mar. 29, 1984) ("[T]he court's concern in *Nichols* was with the lack of any enforceable regulations guaranteeing notice and a hearing . . . . To correct this situation, the court directed HUD to publish [sections from its Handbook] because such provisions, if incorporated into a formal regulation, would provide constitutionally adequate due process protections."). DCHA clearly failed to abide by the HUD regulations. As a result, Ms. Lowery was left homeless and separated from her daughter, without the opportunity to challenge DCHA's action in a timely manner.[10]  Accordingly, the Court finds that Ms. Lowery's Amended Complaint presents a cognizable claim under § 1983.

_____

[10]  DCHA argues that Ms. Lowery's case tries to make a mountain out of a molehill. *See* Def.'s Mem. at 6 n. 4 ("Although there was a slight delay in Plaintiff receiving her hearing, surely this delay was not of constitutional proportions in so far as providing Plaintiff with a basis for filing this Complaint in federal Court as Plaintiff so wrongfully suggests."). The Court doubts that a disabled single parent, caught in a perpetual loop of no-voucher-until-a-hearing and no-hearing-will-be-scheduled, found five months as a homeless person without her child such small potatoes.

## IV.  CONCLUSION

For the reasons stated, DCHA's motion to dismiss will be granted in part and denied in part.  In Count One of the Amended Complaint, Ms. Lowery has advanced a viable § 1983 claim that DCHA violated her rights under the USHA to a reasonably expeditious hearing.  Counts Two and Three of the Amended Complaint will be dismissed.

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge

DATE: March 14, 2006.